UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| HENRY JORDAN | ) | | |
| | ) | | |
|    *a.k.a.* HANK JORDAN, | ) | | |
|    *a.k.a.* HENRY BROADWELL, | ) | No. | 1:09-cv-96/1:04-cr-129 |
|    *a.k.a.* DOUGLAS HENRY | ) | | *Chief Judge Curtis L. Collier* |
|       BROADWELL, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA | ) | | |

**MEMORANDUM**

Henry Jordan ("Jordan") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 70).[1] Jordan contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. The United States opposes the motion (Court File No.74).

For the reasons which follow, the Court has determined resolution of two of the claims Jordan raises cannot be resolved without an **EVIDENTIARY HEARING** pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings. The Court finds no reason to vacate the judgment of conviction at this time, and Jordan's convictions stand. However, Jordan is entitled to an evidentiary hearing, to establish whether counsel ineffectively failed to communicate the government's plea offer and whether counsel labored under a conflict of interest when he represented Jordan. For the reasons set forth below, all other claims contained within the § 2255 motion will be **DENIED** (Court File No. 70).

---

      [1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

**I.     Motions**

Also pending before the Court is Jordan's motion to amend his § 2255 motion with a case that relates back to a claim raised in his timely filed § 2255 motion (Criminal Court File No. 76). Accordingly, Jordan's motion to amend is **GRANTED** (Criminal Court File No. 76). Because the Court has determined an evidentiary hearing is necessary on two issues, Jordan's motion requesting such a hearing is **GRANTED** to the extent a hearing will be conducted on his claims that counsel failed to communicate the government's plea offer to him and counsel operated under a conflict when representing him in his federal criminal case (Criminal Court File No. 82).

**II.    28 U.S.C. § 2255 - Standard of Review**

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court, that imposed the sentence, to vacate, correct, or set aside the sentence, on the grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

This Court has jurisdiction to adjudicate this matter under 28 U.S.C. § 1331. The movant has the burden of establishing any claim asserted in the motion by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

In order to obtain relief under § 2255 when a constitutional error is alleged, the record must reflect a constitutional error of such magnitude that it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v.*

*United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967 (2002).

### III.    Procedural Background

On August 24, 2004, a grand jury sitting in the Eastern District of Tennessee filed a two-count Indictment charging Henry Jordan, *a.k.a.* "Hank Jordan," *a.k.a.* "Henry Broadwall," *a.k.a.* "Douglas Henry Broadwell." Count One charged that on January 15, 2004, Jordan, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1) (Criminal Court File No. 1). Count Two charged that on January 15, 2004, Jordan possessed with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). The Indictment also contained the following Sentencing Allegations: The Grand Jury Further charges, as to Count One, that Jordan has sustained at least three previous convictions for violent felony offenses (18 U.S.C. § 924(e) and USSG § 4B1.4) and at least two previous felony convictions for crimes of violence (USSG § 2K2.1(a)(4)(A)); possessed a firearm in connections with the controlled substance offense set out

3

in Count Two (USSG §§ 4B1.4(a)(3)(A) & (c)(2) and 2D1.1(b)(1)); and possessed eight firearms USSG § 2K2.1(b)(1)(B)). The Grand Jury further charged as to Count Two, that Jordan has sustained at least two previous convictions for crimes of violence (USSG § 2D1.1(b)(1)) and possessed a dangerous weapon in connection with the drug offense (USSG § 2D1.1(b)(1)).

Jordan was arrested on September 10, 2004 and he filed a motion to suppress on October 19, 2004. The motion to suppress was denied on January 25, 2005.

On March 8, 2005, a three-count Superseding Indictment was filed charging Jordan with one count of, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, possession of a firearm and ammunition on January 15, 2004, in violation of 18 USC §§ 922(g)(1) and 924(e); one count of possession with intent to distribute marijuana, in violation of 21 USC § 841(a)(1) and (b)(1)(D); and one count of possessing a firearm in furtherance of the drug trafficking crime alleged in Count Two of the Indictment, in violation of 18 USC § 924(c)(1)(A)(I).

On October 6, 2005, the defendant appeared before Chief United States District Court Judge Curtis L. Collier and pleaded guilty to all three counts of the superseding indictment, without a written plea agreement.

On January 6, 2006, Jordan was sentenced to 240 months imprisonment, consisting of concurrent terms of 180 months on Count One and 60 months on Count Two, and a consecutive term of 60 months on Count Three (Criminal Court File Nos. 43,45). Jordan appealed, and on February 2, 2009, the Sixth Circuit affirmed his convictions and sentence. *United States v. Jordan*, 308 Fed. Appx. 990 (6th Cir. 2009). Jordan timely filed this § 2255 motion on April 8, 2009.

**IV.     Facts**

The following recitation of the offense conduct is taken from the Presentence Investigation Report ("PSR"):

**The Offense Conduct**

> 17.     Based on information received from a confidential informant, on January 15, 2004, Rhea County Sheriff's Department detectives executed a search warrant at the defendant's residence in Rhea County, Tennessee. The detectives found eight firearms and 7.7 pounds (3.5 kilograms) of marijuana. The firearms found were: 1) S&W .38 pistol, 2) S&W .22 long rifle, 3) Marlin .22 rifle, 4) Winchester 30-30 rifle, 5) Marlin .22 rifle, 6) Henry Repeating Arms .22 rifle, 7) Springfield 20 gauge shotgun, and 8) Browning 6mm pistol. Others items found inside the residence included a scanner, two sets of scales, plastic baggies, various containers of ammunition, a set of brass knuckles and $341 in cash. These items were found in close proximity to seven of the firearms.
>
> 18.     While at the residence and immediately before executing the search warrant, officers from the Rhea County Sheriff's Department saw the defendant exit his residence and go to an ammunition box that contained marijuana. The defendant saw the officers approaching and threw the ammunition box in the direction of the officers. Officers found two additional ammunition cans filled with marijuana near the location the defendant had retrieved the first ammunition can. In a shed near the residence, officers found another container of ammunition and a copy of "High Times" magazine.
>
> 19.     The defendant was engaged in the business of selling marijuana. He has been convicted of multiple felonies and had been advised that he is not permitted to possess a firearm prior to this incident.

(PSR, p. 4).

**V.     Discussion**

*A.     Ineffective Assistance of Counsel*

Generally, to establish ineffective assistance of counsel Jordan must demonstrate, as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), two essential elements:   (1) counsel's performance was deficient, i.e., below the standard of competence

demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a bare assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992). Jordan submits several claims of ineffective assistance of counsel which the Court will address separately.

    **1.**    **Counsel Failed to Communicate Plea Offer by the Government**

Jordan contends his attorney failed to communicate a plea offer by the government to him where he could have pleaded guilty to Counts Two and Three of the superseding indictment and had Count One dismissed–a Count for which he received a 180 month sentence. Jordan contends that "[b]ased on the 'plea offer' of 7/14/2005, Petitioner could have agreed upon a sentence of 60 months on Count Two; and 60 months on Count Three, to be served consecutive to Count Two, for a total of 120 months." Jordan further maintains "[t]here is no doubt that petitioner would have accepted this plea offer, if made aware of it, due to the fact that on 10/06/2005, Petitioner entered into a guilty plea for [all] counts of the Superseding Indictment, and ultimately received a far more severe sentence of 180 months, plus the 60 months for 924(c)(1) conviction for a total of 240 months imprisonment." (Criminal Court File No. 70, p. 5(a)). Petitioner contends that he only became aware of the plea offer upon receipt of his file from counsel (Criminal Court File No. 70, p. 5(a)).

The government submitted an affidavit signed by Jordan's defense counsel, Attorney Howard Upchurch, stating he informed Jordan of the plea offer prior to the July 25, 2005, plea deadline but Jordan insisted he wanted to present a defense at trial. It was only after counsel informed Jordan he would not present the requested perjured defense testimony and family members would not testify as Jordan expected, that he expressed an interest in pleading guilty. Counsel avers, however, that the plea deadline had passed by the time Jordan expressed an interest in pleading guilty (Criminal Court File No. 74-1, Affidavit).

Although not filed under penalty of perjury, Jordan has filed a response contesting Mr. Upchurch's averments in his affidavit (Criminal Court File No. 75). Jordan maintains Mr. Upchurch never advised him of the plea offer. Jordan contends Mr. Upchurch's claim he did not accept the plea offer of July 14, 2005, because he did not express an interest in pleading guilty until after he

was notified his family members would not testify in a certain manner is disproved by counsel's April 13, 2005, letter to Jordan explaining his wife would not testify the guns belonged to her or were in here possession even though some of them were registered to her (Criminal Court File No. 75-1, April 13, 2005, Letter). Therefore, according to Jordan, he knew in April 2005, approximately three months prior to the government's plea offer, his wife would not be testifying in his defense.

Jordan has also filed an affidavit from Ms. Diane Broadwell, the mother to Jordan's two sons and presumably his wife at the time of his criminal proceedings, stating she was in constant contact with Mr. Upchurch "in an attempt to support the Petitioner and pay for the fees that were accrued in preparing Petitioner's case[.]" (Criminal Court File No. 82, 6 & 7 of 12, Affidavit). Ms. Broadwell avers she was never told by Jordan to perjure herself nor was she told Jordan could received a sentence of less than twenty years or that any of the charges would be dismissed (*Id.*).

A criminal defendant is entitled to know if the government has made a plea offer. *See, e.g., Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) ("a defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance as a matter of law"); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3rd Cir. 1982) ("It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards."). Therefore, if Jordan can show counsel failed to communicate to him the plea offer extended by the government, then he establishes the first prong of *Strickland* test, i.e., that counsel performed deficiently. The Sixth Circuit has instructed that "[w]ith respect to the second prong of *Strickland*, a petitioner may establish the requisite prejudice by demonstrating a 'reasonable probability' that if he had been notified of the plea offer, he would have accepted it." *Guerrero v.*

*United States*, 383 F.3d at 416-17 (citations omitted).

The record presents conflicting testimony on this issue. Jordan maintains counsel failed to communicate the government's plea offer to him and counsel avers he did communicate the offer. Although counsel avers Jordan did not decide to plead guilty until after the expiration of the plea deadline upon notification that family members would not testify as he anticipated, counsel's letter to Jordan months prior to the expiration of the plea deadline reflects Jordan was notified Ms. Broadwell would not testify as he anticipated several months prior to the government's proffered plea agreement.

Thus, the record does not conclusively show Jordan is entitled to no relief. "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Based on the record before this Court, Jordan will be **GRANTED AN EVIDENTIARY HEARING** because the record does not clearly establish that Jordan is not entitled to relief on this claim. Accordingly, a **HEARING** will be scheduled to determine whether counseled failed to communicate a plea offer to Jordan and whether there is a reasonable probability that if he had been notified of the plea offer, Jordan would have accepted it.

### 2. Alleged Conflict of Interest

Although somewhat confusingly pled, the Court discerns Jordan is claiming counsel had a conflict of interest when he simultaneously represented him and Donnie Burton("Burton") because Burton was a government witness against Jordan. In addition, Jordan claims counsel prevented him from cooperating with the government by providing information about Burton's illegal activities (Criminal Court File No. 70, p. 6(a)).

Jordan claims state law enforcement officers executed a search warrant at his residence on January 15, 2004, and discovered marijuana, firearms, ammunition, drug paraphernalia, and cash. Jordan was arrested and transported to the Rhea County Police Department. According to Jordan, prior to posting bond, an officer invited Jordan to cooperate in securing the arrest of Burton for possession/distribution of marijuana. Jordan declined the invitation and later met with Burton and informed him of the Rhea County Police Department's request.

Jordan asserts approximately sixty days later, without his assistance, Burton was arrested by the Rhea County Police Department for possession of marijuana. Jordan advised Burton to hire Mr. Upchurch, which he did. According to Jordan, Mr. Upchurch represented them on substantively related matters.[2] In support of this claim, Jordan provides a June 16, 2004, letter from Mr. Upchurch to the Rhea County Circuit Court Clerk referencing motions submitted to be filed in state court on Jordan's and Burton's behalf (Criminal Court File No. 70, Exhibit B, Motion).[3] Contrary to Jordan's claim, the letter evidencing that counsel sent discovery motions in three different cases, including his case and Burton's case, under one cover letter, does not, in and of itself, demonstrate Mr. Upchurch represented him and Burton on substantively related matters.

Jordan was arrested on September 10, 2004, for the instant federal offenses. Jordan contends once his suppression motion was denied on December 15, 2004, counsel suggested he consider

---

[2] This claim is confusing as Burton's federal criminal case, Case No. 1;02-cr-42, reflects Burton had been convicted of a federal drug offense and sentenced to the custody of he Bureau of Prisons for a term of 30 months on September 6, 2002 (Criminal Case No. 1:02-cr-42, Court File Nos. 19, 21). The record reflects the judgement was executed on December 19, 2002, by delivering Burton to FCI Berkley (Criminal Court File No. 23). Furthermore, it appears that Burton's supervision did not commence until April 21, 2004 (Criminal Court File No. 24).

[3] Apparently Jordan was indicted in Rhea County under one of his aliases as his case caption refers to Douglas Broadwell. (Criminal Court File No. 70, June 16, 2004, letter).

cooperating with the government to reduce his sentence (Criminal Court File No. 70,p. 6(a)). Jordan's claim then becomes somewhat confusing as he alleges counsel specifically mentioned Janet Price, whom authorities had investigated for a homicide, and Donnie Burton. Jordan claims he advised counsel he would consider cooperating, and in fact, later that day provided details of the Janet Price investigation and attempted to give details of Burton but Mr. Upchurch told him none of the authorities were interested in Burton. Jordan contends counsel prevented him from communicating information about Burton to the authorities because counsel also represented Burton in state court. According to Jordan, this conflict prevented him from cooperating with authorities in an effort to reduce his federal sentence.

Mr. Upchurch missed Jordan's September 1, 2005, rearraignment and according to Jordan, counsel later advised him he had missed his rearraignment because he was in court with Burton.[4] Jordan claims during that same alleged conversation counsel advised he had investigated the details of the Janet Price matter and stated he would mention Jordan's cooperation in court for a possible Rule 35 reduction. Finally, Jordan claims that subsequent to his conviction, he has learned that Burton was a government witness against him.

Mr. Upchurch avers he missed Jordan's September 1, 2005, rearraignment because he did not receive notification, and he was attending a deposition in Chattanooga in an unrelated civil matter. In addition, counsel avers he never represented Burton in federal court or in any state matter

---

[4] This claim is unsupported by the record in this case and in Burton's federal criminal case. Burton's federal criminal case file reflects that on February 24, 2005, Burton was remanded to the custody of the United States Marshal to serve a 12 months sentence and was delivered to FCI Lexington, KY on May 26, 2005, and supervision commenced on December 9, 2005 (Criminal Case No. 1:02-cr-42, Criminal Court File Nos. 31, 33, 34). In addition, Mr. Upchurch's response to the Court's Show Cause Order during Jordan's criminal proceedings and his affidavit submitted with the government's response to the instant § 2255 motion contradict this claim.

related to Jordan's case, counsel's affidavit is silent as to Jordan's claim Burton was a government witness against him and his claim counsel prevented him from cooperating with government authorities telling him no one was interested in information on Burton.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Under the *Cuyler* test, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id*. at 349-350. In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court found that the presumed prejudice standard of *Cuyler v. Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation. *Id*. at 175; *see also Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir., 2007) (The Sixth Circuit "has consistently held that, for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland*, standard applies.").

The Sixth Circuit has made it clear that *Cuyler's* analysis does not apply in cases of successive conflicts of interests. *Kumar v. United States*, 163 Fed. Appx. 361, 365 (6th Cir. 2006). "Joint, or dual, representation occurs where a single attorney represents two or more co-defendants in the same proceeding." *Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003). "[W]hile multiple representation refers to simultaneous representation in separate proceedings." *Id.* at 456, fn. 15. "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness. . . . It is more difficult for a defendant to show that counsel actively

12

represented conflicting interest in cases of successive rather than simultaneous representation." *Id.* at 459 (citations omitted).

Although the Sixth Circuit stated it had not addressed the issue of whether *Cuyler* applies to cases in which an attorney concurrently represents a government witness in the case of his criminal client, it has stated it is conceivable that it would apply in such a case. *Kurmar v. United States*, 163 Fed. Appx. 361, 366 (6th Cir. 2006), *available at* 2006 WL 20553. The Eight Circuit, however, has found that "[c]onflicts may arise when an attorney simultaneously represents clients with differing interests (multiple representation), or when an attorney representing a defendant has previously represented co-defendants or trial witnesses (successive representation). *United States v. Shepard*, 675 F.2d 977, 979 (8thCir. 1982). "It is more difficult for a defendant to show that counsel actively represented conflicting interests in cases of successive rather than simultaneous representation." *Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003). Noting "the most common example of an actual conflict of interest arising from successive representation occurs where an attorney's former client serves as a government witness against the attorney's current client at trial[,]" the *Moss* court determine the *Cuyler* standard should apply as the attorney's "representation of Moss and Kohn differed from the traditional successive representation scenario in that they shared more than a substantial relatedness-they were near identical.[5] Attorney Murphy's representations occurred during the same proceedings and arose from identical facts." *Id.* at 462.

---

[5] In *Moss* counsel represented Moss pre-indictment but represented both Moss and Kohn at the arraignment. Attorney Morreale subsequently entered an appearance on behalf of Moss even though Attorney Murphy did not withdraw as Moss' counsel. *Id.* at 450. In addition, Moss payed Kohn's legal fees.

13

Although the record indicates Mr. Upchurch may have represented Jordan and Burton simultaneously, the record is not clear. Nevertheless, to establish a violation of the Sixth Amendment, Jordan must demonstrate counsel "actively represented conflicting interests" and an actual conflict of interest adversely affected counsel's performance. *Wilson v. Parker*, 515 F.2d 682, 697-98 (6th Cir. 2008). When a § 2255 movant claims ineffective assistance of counsel on the ground counsel represented simultaneously conflicting interests at trial, he "must demonstrate that 'a conflict of interest actually affected the adequacy of his representation,'" *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980)), but need not show that but for the conflict the outcome of the trial would have been different. The conflict must be "real or genuine, as opposed to [ ] hypothetical," *Moss v. United States*, 323 F.3d 445, 467 n. 23 (6th Cir. 2003), and must have adversely affected "counsel['s] . . . basic strategic decisions." *Id*. at 446 (quotations omitted).

Once again, the record does not conclusively show Jordan is entitled to no relief. "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d at 782. Based on the record before this Court, Jordan will be **GRANTED AN EVIDENTIARY HEARING** because the record does not clearly establish that Jordan is not entitled to relief on this claim. Accordingly, a **HEARING** will be scheduled to determine whether counseled operated under a conflict of interest and if so, whether it adversely affected counsel's performance.

### 3. Counsel's Alleged Failure to Object to Classification Under the Armed Career Criminal Act ("ACCA")

Jordan complains Counsel failed to object to the use of a Third Degree Burglary and a Grand Larceny conviction for purposes of the ACCA, arguing that Third Degree Burglary is an offense

14

against possession and not the possessor.

Jordan is mistaken as his attorney filed objections to the presentence report ("PSR") specifically claiming:

> The PSR calculates the base offense level based on the two previous convictions for crimes of violence. The defendant asserts that his criminal history consists of only one prior crime of violence (Armed Robbery, Case No. 11212 found at ¶ 52) that has an element either [sic] physical force against the person of another or is burglary, arson, extortion, involves the use of explosives, or involves a serious potential risk of physical injury to another. The defendant contends that he was not convicted of the burglary offenses set forth in ¶s 49 and 51 of the PSR.

(Addendum to the PSR).

In response, the probation officer provided conclusive documentation establishing Jordan was convicted of the disputed burglaries. In addition, the probation officer explained:

> The first conviction for **Burglary-3rd Degree** and Grand Larceny, found at ¶ 49 of the PSR, is correctly counted for **armed career criminal** purposes because it is a **'violent felony'** as defined at 18 USC § 924(e)(2), that is, a crime **punishable by a term exceeding one year**, that is a '**burglary**, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.' The conviction in question qualifies because it was a **burglary** of a Suzuki Motorcycle Shop, for which the defendant received a **sentence of at least 3 years**. Because it was a burglary, the crime inherently 'presents a serious potential risk of physical injury to another.'

(Addendum to the PSR). Thus, during the sentencing hearing counsel withdrew his objection.

The Sixth Amendment right to effective assistance of counsel does not require counsel to raise a meritless argument, *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"), and the failure to raise a meritless argument does not result in any prejudice. *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim"). Such an argument would have lacked merit as the Sixth Circuit has instructed that a third

15

degree burglary conviction under Tennessee law is a violent felony for purposes of the Armed Career Criminal Act. *Taylor v. United States*, 495 U.S. 575, 598 (1990) (concluding Congress meant burglary in the generic sense which means an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime); *United States v. Caruthers*, 458 F.3d 459, 475 (6th Cir. 2006) (finding district court properly applied ACCA sentencing enhancement based on conviction for third degree burglary of a building).[6]

Jordan's Sentencing Guideline range, however, was driven by his career-offender status, not his classification as an armed career criminal. Thus, assuming for the sake of discussion there was a legal basis for counsel to object to his status as an armed career criminal, no prejudice ensued as it had no effect on Jordan's sentence. Accordingly, Jordan is **DENIED** relief on his claim counsel ineffectively failed to object to the third degree burglary conviction being counted under the ACCA.

> 4. **Failure to Object to Imposition of Statutorily-Mandated Consecutive Term of Imprisonment on § 924(c) Conviction**

Jordan contends defense counsel was ineffective for failing to challenge the imposition of the five-year mandatory minimum consecutive sentence on his § 924(c) conviction on the ground he was already subjected to a fifteen year mandatory minimum sentence under § 924(e)(1) for being a felon in possession of a firearm and ammunition, in violation of § 922(g). Thus, Jordan argues the language in 18 U.S.C. § 924(c)(1)(A), which provides that "[e]xcept to the extent that a greater

---

[6] Jordan's contention the third degree burglary statute in 1981does not meet the definition of a violent felony under the ACCA is unavailing. The statute in effect in 1981, Tenn. Code Ann. 39-904, defined burglary in the in third degree, in pertinent part, as "the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling house, with the intent to commit a felony." Tenn. Code Ann. 39-404. The statute further provided for a three to ten year sentence provided a firearm was not used.

16

minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who" uses or carries a firearm in furtherance of a drug trafficking "shall," in addition to the punishment for the drug trafficking crime "be sentenced to a term of imprisonment of not less than 5 years[]" 18 U.S.C. § 924(c)(1)(A), creates an exception to the imposition of consecutive sentences mandated by 18 U.S.C. § 924(c)(1)(A)(ii). According to Jordan, this section excludes consecutive sentences in his case because he was sentenced to the greater minimum fifteen year sentence under § 924(e).

Jordan's argument is legally incorrect as the Sixth Circuit has previously held "that § 924(c)(1)(A) does not nullify a consecutive term of imprisonment for a firearm charge when another provision imposes a higher mandatory minimum sentence for conduct other than firearm-related conduct proscribed by § 924(c)(1) . . ." *United States v. Baldwin*, 41 Fed.Appx. 713, 715 (6th Cir. 2002); *see also United States v. Jolivette*, 257 F.3d 581 (6th Cir. 2001); *United States v. Alariz*, 235 F.3d 386 (8th Cir. 2000); *United States v. Studifin*, 240 F.3d 415 (4th Cir. 2001). The Sixth Circuit explained "that the 'any other provision of law' language provides a safety valve that would
preserve the applicability of any other provisions that could impose an even greater mandatory minimum consecutive sentence for a violation of § 924(c). *Id.* Consequently, Jordan is not entitled to relief on this claim.

In his amended pleading, Jordan argues the consecutive sentence is invalid based on the Sixth Circuit's reasoning in *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010) (Criminal Court File No. 76). This argument is unavailing as the Supreme Court vacated the Sixth Circuit's decision, *United States v. Almany*, 131 S.Ct. 637 (2010) based on its decision in *Abbott v. United States*, 131

17

S.Ct. 18 (2010) wherein it held "that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Id.* at 23. The Court explained a defendant is "subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum." *Id.*

In light of the existing legal authority, counsel had no viable basis to advance such an argument. Therefore, Jordan's argument his sentence pursuant to § 924(e) for violating § 922(g) falls under § 924(c)(1)(A)(ii)'s reference to "any other provision of law" is rejected. Accordingly, because Jordan's consecutive sentences under §§ 924(e) and 924(c) are not in violation of § 924(c)(1)(A)(ii), counsel was not ineffective for failing to make such an argument and § 2255 relief is **DENIED** on this claim.

**VI.   Conclusion**

Jordan is entitled to an **EVIDENTIARY HEARING** pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, to determine whether counsel failed to competently communicate the government's plea offer and whether counsel labored under a conflict of interest. The parties will be afforded an opportunity to supplement the record with additional proof and other materials as provided in Rule 7 of the Rules Governing Section 2255 Proceedings.

For the reasons stated in this Memorandum, Jordan is **DENIED** relief on his two claims pertaining to his sentence. The Court will **RESERVE RULING** on whether Jordan's convictions and sentences were in violation of the Constitution or the laws of the United States, and the motion

to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 pending the completion of the evidentiary hearing. In addition, the Court will **RESERVE RULING** on a Certificate of Appealability as to the dismissed claims pending the conclusion of the evidentiary hearing.

Jordan will be appointed counsel to represent him as to the two issues to be addressed in the evidentiary hearing. Accordingly, the matter is **REFERRED** to the Magistrate Judge Susan K. Lee to appoint counsel to represent Jordan as to these two issues.

An appropriate order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**